UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| ALAN PULSIPHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:08-cv-01374-RCJ-LRL |
| | ) | |
| CLARK COUNTY et al., | ) | |
| | ) | **ORDER** |
| Defendants. | ) | |

This case arises out of alleged race-, religion-, and gender-based employment discrimination. Before the Court is Defendants' Motion for Summary Judgment (ECF No. 42). For the reasons given herein, the Court denies the motion.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiff Alan Pulsipher is a white, male member of the Church of Jesus Christ of Latter-day Saints, commonly known as the "Mormon Church." (Am. Compl. ¶ 13, ECF No. 30). He has been employed by Defendant Clark County, Nevada in the Division of Juvenile Justice Services ("DJJS") for over a decade and is currently classified as Management Analyst II C-29. (*Id.* ¶¶ 12, 15).

In the late 1990s, Clark County established the DJJS Probation Officer Academy ("the Academy") within DJJS because state law required all juvenile probation officers to attend a basic law enforcement academy, and sending the county's probation officers to the police academy in Carson City would have been prohibitively expensive. (*Id.* ¶¶ 16–18). The first cadet cycle at the

academy began in the Spring of 1999. (*Id.* ¶ 19). Plaintiff served as the Executive Officer for the first four cycles, after which he was assigned as Commander, beginning with the Spring 2001 cycle. (*Id.* ¶¶ 19–20). Plaintiff served as Commander through June 2006, administering a total of twelve regular and special cadet cycles. (*Id.* ¶¶ 22–24).

On or about April 26, 2006, DJJS reorganized, resulting in the creation of the Professional Development Unit ("PDU"). (*Id.* ¶ 29). Defendant Larry Carter was assigned as the Assistant Director in charge of the PDU, which consisted only of Defendant Sheron Hayes and Plaintiff. (*Id.* ¶ 30). Hayes reported to Defendant Cherie Townsend during this time period. (*Id.* ¶ 31).[1] Soon thereafter, Hayes was classified as a Principal Management Analyst C-31 and was made Plaintiff's direct supervisor. (*Id.* ¶ 32).[2]

Plaintiff alleges that Hayes began to treat him differently from other DJJS employees who were not members of the relevant protected classes, to wit: (1) on or about November 17, 2006, Hayes entered a class Plaintiff was teaching without prior notice and solicited confidential evaluations of Plaintiff; (2) Hayes began giving Plaintiff little or no notice of staff meetings, although other employees received notice; (3) Hayes routinely scheduled meetings based on other employees' availability and then mandated Plaintiff's employment without ever having inquired as to his availability; (4) on January 18, 2007, Hayes and Brenda Martinez, a DJJS employee in the PDU,

---

[1] It is not clear from the AC what Townsend's position was at this time or why Hayes reported to her instead of Carter.

[2] Plaintiff alleges that Hayes was made his supervisor "despite having a poor record in her employment . . . and despite not having previously worked with the Academy." (*Id.*). Plaintiff does not allege that he competed for a promotion with Hayes. The significance of this allegation is clarified in Plaintiff's response to the present motion for summary judgment, where Plaintiff alleges that Clark County has a custom of transferring and/or promoting poor employees who threaten race discrimination lawsuits (such as Hayes) in order to placate them, and that Hayes's transfer resulted in the transfer of employment duties from Plaintiff to Hayes in violation of the Equal Protection Clause.

confiscated four Academy logbooks from Plaintiff's office while he was on vacation that were not needed for work purposes but which contained documentation of Hayes's harassment of Plaintiff; (5) Hayes directed Martinez to maintain these logbooks, which were critical to Plaintiff's performance, at a location away from the Academy, making performance of his duties more difficult; (6) on June 8, 2007, Hayes denied Plaintiff permission to attend the funeral of a co-worker without applying for leave, while permitting others (including herself) to attend without taking leave; (7) on or about June 26, 2007, Hayes began demanding advance notice from Plaintiff any time he would leave the campus, while not requiring the same of other employees; (8) during the Fall 2006 Academy, Hayes maintained contact with one or more of Plaintiff's problem students, encouraging misconduct in his classes in an attempt to bait him into a work violation; (9) Hayes made derogatory statements about Plaintiff's race and religion; and (10) Hayes frequently denied Plaintiff's requests to leave campus, even for work-related matters, requiring him to take paid leave to do so. (*Id.* ¶¶ 33–49, 52). In his opposition to the present motion, Plaintiff describes the alleged disparate treatment as "death by a thousand cuts." (Resp. 4, ECF No. 49). This treatment allegedly caused Plaintiff to alter his working conditions in a time-consuming and disruptive way, requiring him to document every interaction and every situation that could be misconstrued by Hayes, in order to defend himself. (Am. Compl. ¶¶ 50–51). It also allegedly resulted in Plaintiff's being passed over for a promotion for which he was otherwise qualified. (*Id.* ¶ 53).

In or about June 2006, Plaintiff submitted an application for reclassification to Principal Management Analyst. (*Id.* ¶ 54). Because of Plaintiff's race, gender, and religion, his application was never even processed, despite his qualifications for the position and his diligence in monitoring the status of his application. (*Id.* ¶¶ 55–57).

Plaintiff sued Clark County, DJJS, Townsend, Carter, and Hayes in this Court for violations of federal and state anti-discrimination laws, invoking the Court's jurisdiction under 42 U.S.C. §

1983. (*See* Compl. ¶ 2, ECF No. 1). The Amended Complaint ("AC") omitted DJJS as a defendant and identified the jurisdictional basis of the complaint as 42 U.S.C. § 2000e-2. (*See* Am. Compl. ¶ 2). Either statute supports federal jurisdiction, and the Court therefore also has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. The AC lists four causes of action: (1) Violation of 42 U.S.C. § 2000e-2 (Clark County); (2) Hostile Workplace Environment (Clark County); (3) Violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 (Hayes, Carter, and Townsend); and (4) Violation of Nevada Revised Statutes ("NRS") section 613.330 (All Defendants). Defendants have moved for summary judgment against all claims.

## II.   SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the

    initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

    If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

    At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his

favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. ANALYSIS

### A. Title VII of the Civil Rights Act of 1964 (First and Second Causes of Action)

Title VII of the Civil Rights Act of 1964 limits the jurisdiction of federal courts to those claims that the EEOC has had an opportunity to examine. The scope of federal jurisdiction over a complaint under Title VII is therefore coextensive with the claims administratively exhausted with the EEOC, including claims filed but which the EEOC fails to adjudicate or investigate:

> To establish subject matter jurisdiction over his Title VII . . . claim, [the plaintiff] must have exhausted his administrative remedies by filing a timely charge with the EEOC. This affords the agency an opportunity to investigate the charge. Subject matter jurisdiction extends to all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge.

*Vasquez v. County of L.A.*, 349 F.3d 634, 644 (9th Cir. 2003) (citing 42 U.S.C. § 2000e-5(b); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099–1100 (9th Cir. 2002)) (footnotes omitted).

In an affidavit attached to his opposition to the present motion, Plaintiff attests that he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter, (Pulsipher Aff. ¶ 79, ECF No. 50), but he does not attach any such letter to any of his pleadings. Nor does he attest to the scope of the alleged right-to-sue letter or its date, facts which are dispositive of his ability to sue.[3] Because such a letter defines the contours of the Court's jurisdiction to hear Title VII claims, the Court simply cannot entertain Title VII claims without one. It is Plaintiff's burden to overcome the presumption against federal jurisdiction.

---

[3] Plaintiff filed the Complaint on October 10, 2008. If he received his right-to-sue letter more than ninety (90) days before that date, i.e., before July 12, 2008, his Title VII claims are lost. *See* 42 U.S.C. § 2000e-5(f)(1).

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S., 375, 377 (1994). At oral argument, Plaintiff produced his EEOC intake questionnaire and right-to-sue letter, which were entered into the record. The letter was mailed to Plaintiff on July 14, 2008, making his Complaint timely. (*See* Right to Sue Letter, ECF No. 77, at 6). In the EEOC questionnaire, Plaintiff checked boxes for race, sex, age, religion, and retaliation, and he complained of "Harrassment [sic] - Hostile Work Environment." (*See id.*, ECF No. 77, at 3). The Court therefore has jurisdiction over the Title VII claims.

### B. Equal Protection Pursuant to 42 U.S.C. § 1983

#### 1. The Individual Defendants

In the Ninth Circuit, a plaintiff may sue under both Title VII and the Fourteenth Amendment (via § 1983) for illegal discrimination in employment, even when a § 1983 claim is not based on substantive rights distinct from those protected by Title VII. *See Roberts v. Coll. of the Desert*, 870 F.2d 1411, 1415 (9th Cir. 1988).[4] Therefore, the § 1983 claims are not superfluous. Plaintiff's allegations under this cause of action are not different from his allegations relating to his Title VII and state law discrimination claims. The merits of the § 1983 claims, which parallel the Title VII and state law discrimination claims, are addressed in Part III.C, *infra*.

#### 2. Clark County

Plaintiff has pled this cause of action "As to Defendants Hayes, Carter and Townsend Only." (Am. Compl. 9). In his opposition to the present motion, however, Plaintiff alleges that Clark County has a custom of transferring and/or promoting poor employees who threaten race discrimination lawsuits (such as Hayes) in order to placate them, and that Hayes's transfer resulted in the transfer of employment duties from Plaintiff to Hayes in violation of the Equal Protection Clause. Plaintiff makes this argument in order to save his § 1983 claim against Clark County's argument that he has

---

[4] There is a circuit split on this issue. *See Moche v. City Univ. of N.Y.*, 781 F. Supp. 160, 168 (E.D.N.Y. 1992).

alleged no discriminatory custom by the county. Plaintiff's allegations are likely insufficient to state a claim under the Equal Protection Clause, because Plaintiff alleges not that the transfer of employment duties from Plaintiff to Hayes was motivated by an intent or purpose to discriminate against Plaintiff, *see Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264–65 (1977) (citing *Washington v. Davis*, 426 U.S. 229 (1976)), but only by a motivation to placate a poor employee (Hayes) who had threatened to sue the employer based on unrelated racial discrimination. Although these facts plausibly support a disparate impact claim under Title VII, *see* 42 U.S.C. § 2000e-2(k), such a claim does not lie under the Fourteenth Amendment. *See Vill. of Arlington Heights*, 429 U.S. at 264–65. Plaintiff did not present any disparate impact claim to the EEOC. Moreover, Plaintiff does not name Clark County as a Defendant with respect to the § 1983 claim in the first instance. (*See* Am. Compl. 9). Nor do any of the twenty paragraphs of allegations in the AC under this cause of action put Clark County on notice of a § 1983 claim against it. Those allegations repeatedly name only Hayes, Carter, and Townsend individually. (*See id.* ¶¶ 80–99).

### C.   NRS 613.330

Nevada's unlawful employment practices statute makes it unlawful, *inter alia*, for an employer to:

> fail or refuse to hire or to discharge any person, or otherwise to discriminate against any person with respect to the person's compensation, terms, conditions or privileges of employment, because of his or her race, color, religion, sex, sexual orientation, age, disability or national origin; or [t]o limit, segregate or classify an employee in a way which would deprive or tend to deprive the employee of employment opportunities or otherwise adversely affect his or her status as an employee, because of his or her race, color, religion, sex, sexual orientation, age, disability or national origin.

Nev. Rev. Stat. § 613.330(1)(a)–(b). Like Title VII, the parallel Nevada statute requires exhaustion of administrative remedies by filing a complaint with the Nevada Equal Rights Commission ("NERC") before an action can be commenced in court. *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) (citing

Nev. Rev. Stat. § 613.420).[5]

**1.      Employment Discrimination**

The standards for proving discrimination under the state statute mirror the standards under Title VII. *See Apeceche v. White Pine Cnty.*, 615 P.2d 975, 977 (Nev. 1980) ("NRS 613.330(1) is almost identical to s 703(a)(1) of Title VII of the Civil Rights Act of 1964.").

> In cases involving an employer's isolated decision to discharge or to alter the terms of employment of an individual employee, the focus of the inquiry is whether the employer is treating some people less favorable [sic] than others because of their race, religion, sex, or national origin. The employee carries the initial burden of establishing a prima facie case of discrimination by proving (1) she is a member of a protected class, (2) she is qualified for the job, (3) she is satisfying the job requirements, (4) she was discharged, and (5) the employer assigned others to do the same work.
>
> . . . .
>
> Once a prima facie case of discrimination is established, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions.

*Id*. (citations omitted). This mirrors the federal standards: "[A] plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

First, Plaintiff has established by affidavit that he is a member of three protected classes: Caucasian, male, and a member of the Church of Jesus Christ of Latter-day Saints. (*See* Pulsipher Aff.

---

[5]In states such as Nevada, where the EEOC has a work-sharing agreement with the state equal rights authority, *see* 29 C.F.R. § 1601.74(a) (listing NERC's predecessor, the Nevada Commission on Equal Rights of Citizens), exhaustion of administrative remedies with either entity constitutes exhaustion with both entities. *Puryear v. County of Roanoke*, 214 F.3d 514, 518–19 (4th Cir. 2000); *see also Green v. L.A. County Superintendent of Sch.*, 883 F.2d 1472, 1476 (9th Cir. 1989).

¶ 3). Second, he has provided affidavit testimony and other documentary evidence indicating his supervisory qualifications for his current position, Management Analyst II, and the position he applied for, Principal Management Analyst. (*See id.* ¶¶ 15–16).

Third, Plaintiff attests to party admissions by Hayes, relayed to Plaintiff through an African-American male co-worker, Jerome Simon, that Hayes "hated white Mormon males." (*See id.* ¶ 12). Plaintiff's attestation to these comments is hearsay, because although Hayes's comments to Simon are non-hearsay party admissions, *see* Fed. R. Evid. 801(d)(2), Simon's report of the comments to Plaintiff is a second level of hearsay that is not saved by any exception, *see* Fed. R. Evid. 803. However, Simon himself testified to similar comments by Hayes. For example, Hayes once accused Simon of "being loyal to the whites." (Simon Dep. 30:10–11, Dec. 15, 2009, ECF No. 53-1). He also testified that Hayes stated to him that whites and Mormons stick together, so blacks should also stick together. (*See id.* 32–33). Simon interpreted her comments as a threat, because Hayes could terminate his employment through her control of funding from the County. (*See id.* 35–36). Patricia Black also testified as to racist and sexist comments made by Hayes against white men, wherein Hayes stated that "she hated all of these white devils" and that "[n]one of them are any good." (Black Dep. 11:20, 22, Feb. 23, 2010, ECF No. 53). Black testified that she was offended, and that she told Hayes so, because Black had a Caucasian son-in-law and grandson. (*See id.* 12:1–12). Elonda Potter testified at her deposition that Hayes had several times pointed to the back of her hand to indicate her skin color in a context that implied that African-Americans should stick together. (Potter Dep. 38–39, Dec. 17, 2009, ECF No. 53-2). Cathryn Hale testified at her deposition that she had heard Hayes use the phrase "Mormon Mafia" "[a] few" times, and that she interpreted this to be meant in a derogatory way. (Hale Dep. 40:22–41:3, Feb. 11, 2010, ECF No. 53-9). Hale referred to Hayes as "abusive," "controlling," and "manipulative," and she opined that "[a]ny environment that she is within is a hostile environment." (*Id.* 41:21–23). This is sufficient evidence of Hayes's motivation to

discriminate against Plaintiff.

There is an additional issue, however. Hayes is the only Defendant for whom Plaintiff provides evidence of discriminatory intent or purpose, but Hayes was not the hiring authority for the promotion that Plaintiff was denied. Plaintiff, however attests that Plaintiff improperly influenced Janet Witt, the DJJS Manager who made the promotion decision, when Witt asked Hayes for her input. (*See* Pulsipher Dep. ¶¶ 57–58). Under the "cat's paw" theory, this set of facts can support a discrimination claim under Title VII. *See Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007). The Ninth Circuit has stated that the theory extends beyond cases where a decision-maker simply "rubber stamps" another's recommendations:

> We hold that if a subordinate, in response to a plaintiff's protected activity, sets in motion a proceeding by an independent decisionmaker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process.

*Id.*; *see id.* at 1182–83 ("Title VII may still be violated where the ultimate decision-maker, lacking individual discriminatory intent, takes an adverse employment action in reliance on factors affected by another decision-maker's discriminatory animus." (quoting *Galdamez v. Potter*, 415 F.3d 1015, 1026 n.9 (9th Cir. 2005))). Plaintiff has provided sufficient evidence of such facts to survive summary judgment.

Fourth, Plaintiff has shown that persons outside of his protected classes were treated more favorably. He attests that Hayes herself, for example, was reclassified to Principal Management Analyst at the Academy, despite her total lack of experience at the Academy and her alleged past poor performance. (*See* Pulsipher Dep. ¶¶ 10, 50–51). Plaintiff also attests to many instances of disparate treatment by Hayes that his non-Caucasian, non-male, and non-Mormon co-workers were not subject to. (*See id.*, *passim*).

1    The burden now shifts to Defendants to show a legitimate, non-discriminatory reason for the
2 action. Defendants argue that Plaintiff's perceptions are not sufficient to allege disparate treatment.
3 But Plaintiff has provided evidence of specific, articulable instances of alleged discrimination and
4 discriminatory motivation that Defendants have not rebutted. Defendants also argue that the alleged
5 derogatory comments by Hayes are time-barred, because Plaintiff did not file an EEOC complaint
6 soon enough after they were made. But Defendants simply conflate the statute of limitations with
7 the admissibility of evidence. Defendants cite no law indicating that evidence of discriminatory
8 motive is inadmissible simply because a plaintiff would be time-barred under Title VII from presenting
9 claims based on employment actions that occurred at the same time as the comments showing
10 discriminatory motive. The date of the wrongful event (or discovery of the event) controls the
11 limitations period, not the earliest date of any particular evidence relevant to the wrongful event.
12 Defendants then note that Hayes disputes making the derogatory comments. At her deposition,
13 Hayes was only asked about her alleged animus against Plaintiff due to his religion, not due to his race
14 or gender, and she responded that she harbored no such attitudes and didn't even know Plaintiff was
15 a Mormon until after the charges were filed against her. (*See* Hayes Dep. 230–31, Dec. 7, 2009, ECF
16 No. 53-11). This is a matter of credibility and weight of evidence. At the summary judgment stage,
17 the Court only asks whether there is sufficient evidence for a reasonable jury to decide the question
18 for the non-moving party. Plaintiff has provided enough evidence. Defendants also argue that Hayes
19 did not have decision-making authority, but as noted above, the cat's paw doctrine applies here. Nor
20 are the allegedly derogatory comments "stray" or isolated. Several of Hayes's co-workers have
21 testified as to comments she has made in the workplace showing discriminatory animus.

22    Still, Defendants argue that Plaintiff was not qualified for the reclassification, and that this
23 was, of course, a legitimate reason not to approve it or to forward the application for processing.
24 Defendant Townsend testified that she was originally supportive of Plaintiff's request for

reclassification, but that when she asked Janet Witt at DJJS Human Resources whether Plaintiff's current position met the requirements for reclassification, Witt responded that it did not, particularly with regard to supervisory responsibilities. (*See* Toewnsend Dep. 39:5–25, Feb. 17, 2010, ECF No. 42-8). But Plaintiff attests that Hayes, motivated by improper reasons, wrongly influenced Witt in her conclusion after Townsend and Witt themselves solicited Hayes's opinion. (*See* Pulisipher Dep. ¶¶ 57–58). Plaintiff attests that Townsend permitted Hayes to opine on his application even after he had filed a hostile work environment complaint against Hayes. (*See id.* ¶ 56). This is sufficient evidence to show that the evaluation of Plaintiff's application and qualifications was tainted by Hayes's wrongful motivation. In light of this, Defendants have not shown a legitimate, nondiscriminatory reason for the failure to promote Plaintiff, or at least to forward his application, such that a reasonable jury could not find for him.

The Court therefore denies summary judgment on the § 1983 discrimination claims, as well as on the discrimination claims under Title VII and state law.

### 2. Hostile Work Environment

"To make a prima facie case of a hostile work environment, a person must show 'that: (1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir.1995) (internal quotation marks omitted)). The elements of a claim based on race are the same, but the verbal or physical conduct must be "based on [one's] race." *Surell*, 518 F.3d at 1108. Plaintiff alleges Clark County created a hostile work environment because he was subjected to

///

///

Hayes's verbal abuse and mistreatment. (Am. Compl. ¶ 73).  Plaintiff alleges the abusive treatment was motivated by discriminatory attitudes, and his allegations are supported by ample evidence, as recounted, *supra*.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 42) is DENIED.

IT IS SO ORDERED.

DATED: This 20th day of September, 2010.

_____
ROBERT C. JONES
United States District Judge